UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

NICHOLAS F. PISCULLI, JR.

                    Debtor.
-------------------------------------------------------------X
NICHOLAS F. PISCULLI, JR.

                    Appellant,

            -against-

T.S. HAULERS, INC. and RANCO SAND
& STONE CORP.,

                    Appellees.
-------------------------------------------------------------X
FEUERSTEIN, J.,

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★    MAR 18 2010    ★

3/19/10
LONG ISLAND OFFICE

ORDER
09 CV 2785(SJF)

On June 30, 2009, appellant Nicholas F. Pisculli, Jr. ("appellant") filed a notice of appeal

from a memorandum decision of the United States Bankruptcy Court for the Eastern District of

New York (Grossman, U.S.B.J.), entered March 4, 2009, which denied, after trial, appellant's

discharge in bankruptcy pursuant to Section 727(a)(2)(B) of the Bankruptcy Code, 11 U.S.C. §

727(a)(2)(B). For the reasons set forth below, the decision of the bankruptcy court is affirmed.


I.      BACKGROUND

        A.      Factual Background[1]

        Appellee Ranco Sand & Stone Corp. ("Ranco") is a corporation doing business at 151

South Street, Manorville, New York. (Complaint in Adversary Proceeding [Compl.], ¶ 3).

_____

        [1] The following facts are not in dispute, unless otherwise indicated.

Appellant conducted business under the name LJC Truck Services ("LJC") and was the sole

owner and shareholder of J&R Materials Corp. ("J&R Materials") and A.N. Leasing Corp.

("A.N. Leasing") (collectively, "appellant's businesses"). (Parties' Joint Statement of Facts filed

in the Adversary Proceeding [Jt. Stat.], ¶ 2). Appellant operated his businesses out of his former

home, located at 106 Emerson Street, Dix Hills, New York (the "Dix Hills Property"), (Jt. Stat., ¶

3), which was owned by his wife Ann Frandolig Pisculli ("appellant's wife"). (Jt. Stat., ¶ 20).

Appellant's wife worked for all three (3) of appellant's businesses without compensation, except

for a period of time when she received health insurance. (Jt. Stat., ¶¶ 16-17). Appellant's wife

also had power of attorney over appellant's businesses, which authorized her to sign checks and

make payments on behalf of the businesses. (Jt. Stat., ¶ 19).

At all relevant times, LJC and J&R Materials were in the business of carting sand and

gravel. (Jt. Stat., ¶¶ 5-6). A.N. Leasing was incorporated for the sole purpose of holding title to

the trucks used by LJC and J&R Materials to cart sand and gravel. (Jt. Stat., ¶ 8). J&R Materials

"customarily and regularly used the trucks [owned by A.N. Leasing] in its business," (Jt. Stat., ¶

9), and its employees, who were "leased" from Island Leasing Services Inc. ("Island Leasing")²,

(Jt. Stat., ¶ 13), "customarily and regularly drove the trucks [owned by A.N. Leasing]," (Jt. Stat.,

¶¶ 10, 15). In addition, at the direction of appellant, J&R Materials "customarily and regularly

paid the repair and maintenance bills for the trucks owned by A.N. Leasing." (Jt. Stat., ¶ 11).

LJC and J&R Materials purchased sand and gravel from Ranco. (Jt. Stat., ¶ 7).

According to Ranco, during the period from September 20, 2003 through June 11, 2005, it

---

² Island Leasing was a payroll and human resources company which billed J&R
Materials for payroll services associated with the truck drivers it leased to J&R Materials. (Jt.
Stat., ¶¶ 13-14).

delivered to LJC, at appellant's request, grit and concrete sand at the agreed upon price of four hundred thirty-nine thousand eight hundred twelve dollars and ninety-seven cents ($439,812.97). (Compl., ¶ 4). According to Ranco, appellant never paid any amount toward the total sum due and owing Ranco. (Compl., ¶ 6).

On or about April 28, 2005, appellant's wife refinanced the Dix Hills Property. (Jt. Stat., ¶ 21). On or about May 7, 2005, appellant's wife deposited the sum of one hundred twenty thousand one hundred thirty-three dollars and twenty-two cents ($120,133.22) ("the refinance proceeds") into a Citibank account which she held jointly with appellant. (Jt. Stat., ¶ 22). From the refinance proceeds, appellant's wife paid a total of one hundred eleven thousand nine hundred eighty dollars and three cents ($111,980.03) to certain creditors of J&R Materials, including thirty thousand dollars ($30,000.00) to Ranco. (Jt. Stat., ¶ 23).

B.     Procedural Background

On or about October 15, 2005 ("the commencement date"), appellant filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court, Eastern District of New York, entitled In re: Nicholas F. Pisculli, Jr., no. 05-89678-mlc ("the bankruptcy proceeding"). Appellant listed Ranco in his Schedules as an unsecured creditor with a claim in the amount of four hundred thirty-nine thousand eight hundred twelve dollars and ninety-seven cents ($439,812.97).

On or about March 13, 2006, while the Chapter 13 petition was pending, appellant, as an officer of A.N. Leasing, sold the assets of A.N. Leasing, consisting of three (3) trucks and three (3) trailers, to All Service Funding for the sum of two hundred forty-seven thousand five hundred

3

dollars ($247,500.00) ("the truck sale proceeds"). (Jt. Stat., ¶ 24). Seventy-six thousand one hundred eighty-nine dollars and nine cents ($76,189.09) of the truck sale proceeds were first used to satisfy all recorded liens against the trucks owed by A.N. Leasing. The balance of one hundred seventy-one thousand three hundred ten dollars and ninety-one cents ($171,310.91) of the truck sale proceeds was then transferred, at appellant's direction, to: (1) appellant's wife, who was not a creditor of A.N. Leasing and who used forty-eight thousand nine hundred sixty-one dollars and fifty-one cents ($48,961.51) of the truck sale proceeds to pay expenses of J&R Materials and the remainder of the eighty thousand dollars ($80,000.00) in truck sale proceeds to pay personal living expenses, (Jt. Stat., ¶ 31); (2) Island Leasing, as payment for payroll and human resources obligations of J&R Materials; and (3) Suffolk Manufacturing Company, a company owned by appellant's brother-in-law, "for safekeeping." (Jt. Stat., ¶¶ 25-29).

On April 12, 2006, the bankruptcy proceeding was converted to a Chapter 7 proceeding and Robert Pryor was appointed Chapter 7 Trustee ("the trustee"). The fourteen thousand two hundred eighty-one dollars and nine cents ($14,281.09) from the truck sale proceeds that had been transferred to Suffolk Manufacturing Company were eventually turned over to the trustee. (Jt. Stat., ¶ 26).

On or about August 1, 2006, Ranco commenced an adversary proceeding against appellant pursuant to, *inter alia*, 11 U.S.C. § 727(a)(2)(B), in the United States Bankruptcy Court, Eastern District of New York, entitled <u>Ranco Sand & Stone Corp. v. Pisculli (In re Pisculli)</u>, no. 806-08337-reg ("the adversary proceeding")[3], objecting to appellant's discharge in

---

[3] A related adversary proceeding was also commenced by T.S. Haulers, Inc., entitled <u>T.S. Haulers, Inc. v. Pisculli</u>, no. 806-8335-reg.

4

bankruptcy. Ranco claimed, *inter alia*, that appellant's discharge should be denied pursuant to 11 U.S.C. ¶ 727(a)(2)(B) because the transfer of the truck sale proceeds to third parties after the commencement date of the bankruptcy proceeding was undertaken "with the intent to hinder, delay or defraud [Ranco] and [appellant's] estate * * *."[4] (Compl., ¶¶ 18, 22). Appellant contended, however, that the funds paid to: (1) Island Leasing were paid on account of debts owed by J&R Materials to Island Leasing; and (2) appellant's wife constituted payments by appellant to his wife on account of her having used the refinancing proceeds of her own house to satisfy the corporate debts of J&R Materials.

On January 13, 2009, a trial was held on the complaint, over which the Honorable Robert E. Grossman, United States Bankruptcy Judge, presided. By memorandum decision entered March 5, 2009 (the "memorandum decision"), Judge Grossman found, *inter alia*, that appellant's discharge should be denied pursuant to Section 727(a)(2)(B) because the transfer of the truck sale proceeds constituted a post-petition transfer of property of the bankruptcy estate. (Memorandum Decision, p. 4). Specifically, Judge Grossman found, *inter alia*, that the truck sale proceeds were property of appellant's estate because he had more than "a mere derivative interest" in the truck sale proceeds insofar as: (1) appellant was the sole shareholder and owner of A.N. Leasing; (2) appellant directed the sale of the assets of A.N. Leasing and paid off the remaining obligations of A.N. Leasing; (3) appellant and his wife testified that once the notes on A.N. Leasing's trucks were paid, A.N. Leasing had no other debts and was no longer conducting any business; and (4) the liquidation of all of the assets of A.N. Leasing created equity for the shareholders of that company and, thus, appellant, as A.N. Leasing's owner and direct beneficiary, had full control

---

[4] Ranco withdrew its other two (2) causes of action prior to trial.

over the truck sale proceeds. Id., pp. 5-6. Judge Grossman also found several "badges of fraud" relating to the transfer of the truck sale proceeds, including: (1) inadequate consideration for the transfer of the truck sale proceeds to appellant's wife, as evidenced by the fact that the creditors appellant's wife paid with her refinancing proceeds were creditors of J&R Materials, not appellant or A.N. Leasing, and that appellant's wife used over thirty thousand dollars ($30,000.00) of those proceeds to pay her own personal expenses; (2) the fact that the truck sale proceeds were transferred to appellant's wife and to Island Leasing, the company which employed appellant's wife; (3) the fact that appellant retained a benefit from the transfer of the truck sale proceeds to his wife because she used those proceeds to make payments on the house occupied by both her and appellant, as well as their other personal expenses; (4) that appellant intentionally selected to satisfy particular business obligations to Island Leasing and his wife, for which he felt personally obligated, to the detriment of his personal creditors; and (5) testimony of appellant and his wife that they deposited funds into the wife's personal bank account in order to "prevent judgement [sic] creditors from freezing the accounts and receiving the money." (Id., pp. 9-10). Judge Grossman rejected appellant's contention that the transfer of the truck sale proceeds was not fraudulent because it was made to satisfy creditors and to save a business on the basis: (1) that at the time of the transfer, there was no business to save because A.N. Leasing no longer conducted business and did not have a bank account, any liabilities or additional income; and (2) that the creditors paid from the truck sale proceeds were not creditors of appellant or of A.N. Leasing. (Id., p. 10). Accordingly, Judge Grossman denied appellant's discharge on the basis that the truck sale proceeds were property of appellant's estate and that appellant transferred those proceeds with the intent to hinder, delay or defraud Ranco or the estate. (Id.).

6

On March 11, 2009, appellant filed a notice of appeal of Judge Grossman's March 5, 2009 decision.

## II.    DISCUSSION

### A.    Standard of Review

On an appeal from a bankruptcy court decision, a district court must review findings of fact under a "clearly erroneous" standard, with "due regard * * * given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. "[P]articularly strong deference [must be given] a [bankruptcy] court's findings of fact based on credibility assessments of witnesses it has heard testify." In re Boyer, 328 Fed. Appx. 711, 716, 2009 WL 1635922 (2d Cir. June 11, 2009) (summary order) (quoting United States v. Canova, 412 F.3d 331, 357 (2d Cir. 2005)); see also In re Gollomp, 198 B.R. 433, 436 (S.D.N.Y. 1996) ("Deference is given to the [bankruptcy court's findings of fact] because of that court's expertise and superior position to make determinations of credibility.") Issues of law, on the other hand, are reviewed de novo. See In re Vouzianas, 259 F.3d 103, 107 (2d Cir. 2001). "[T]he district court * * * may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

### B.    Section 727(a)(2)(B)

Section 727(a)(2)(B) of the Bankruptcy Code provides, in relevant part, that "[t]he court shall grant the debtor a discharge unless--(2) the debtor, with intent to hinder, delay, or defraud a creditor * * *, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to

be transferred, removed, destroyed, mutilated, or concealed–* * * (B) property of the estate, after the date of the filing of the petition." 11 U.S.C. ¶ 727(a)(2)(B). Section 727(a)(2)(B) is intended "to deny discharge to a debtor who fails to disclose transactions regarding his assets subsequent to filing his petition for bankruptcy." In re Bostick, 400 B.R. 348, 356 (Bankr. D. Conn. 2009) (quoting In re Standiferd, No. 7-00-16958 MA, Adv. No. 07-1076, 2008 WL 5273690, at * 8 (Bankr. D. N.M. Dec. 17, 2008)).

To prevail under Section 727(a)(2)(B), the party objecting to discharge must demonstrate: (1) that the debtor, (2) transferred or concealed, (3) property of the bankruptcy estate, (4) with the intent to hinder, delay or defraud the creditor, (5) after the filing of the bankruptcy petition. In re Bostick, 400 B.R. at 356. The party objecting to discharge must establish those elements by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Section 727(a) of the Bankruptcy Code "must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" In re Chalasani, 92 F.3d 1300, 1310 (2d Cir. 1996) (quoting Bank of Pennsylvania v. Adlman (In re Adlman), 541 F.2d 999, 1003 (2d Cir. 1976)).

      1.     Property of the Estate

          a.     Property within the Meaning of Section 727(a)(2)

Appellant alleges that the truck sale proceeds were property of A.N. Leasing and that appellant merely had a derivative interest in those proceeds and, thus, the truck sale proceeds do

not constitute "property of the debtor" within the meaning of Section 727(a)(2)(A)[5]. Appellant also conclusorily challenges the bankruptcy court's finding that he had a direct interest in the truck sale proceeds as clearly erroneous.

It was not clear error for the bankruptcy court to find that since appellant was the only person with any interest in A.N. Leasing after it liquidated all of its assets and effectively ceased to exist, he had a direct interest in the proceeds from the sale of those corporate assets. See, e.g. In re Mosher, 417 B.R. 772, 780 (Bankr. N.D. Ill. 2009) (finding that since the debtor was the only person with any interest remaining in the defunct corporation, the assets of that corporation were effectively liquidated to him and, therefore, all assets of the corporation were the assets of the debtor ).

Nonetheless, the bankruptcy court alternatively found that the truck sale proceeds were property of the bankruptcy estate because appellant's businesses, including A.N. Leasing, were merely alter egos of appellant himself sufficient to pierce the corporate veil. Appellant challenges this finding on the basis that "[p]roperty of a corporation, even where the Debtor is the sole shareholder, belongs to the corporation and not the debtor." In re Rodriguez, No. 05-19599, Adv. No. 06-01119, 2008 WL 3200215, at * 7 (Bankr. S.D.N.Y. Aug. 5, 2008).

Although Section 727(a)(2)(B) only applies to "property of the estate," a court may pierce the corporate veil of a business and treat its assets as the debtor's individual property, and, thus, property of the debtor's estate, under an alter ego theory. See, e.g. In re Riley, 351 B.R. 662, 671

---

[5] Section 727(a)(2)(A) refers to "property of the debtor," whereas Section 727(a)(2)(B), under which the bankruptcy court denied discharge, refers to "property of the estate." However, for purposes of this appeal, I will assume that the terms constitute a distinction without difference and are, thus, interchangeable.

9

(Bankr. E.D. Wisc. 2006); In re Bonham, 224 B.R. 114, 116 (Bankr. D. Alaska 1998) (holding

that courts have the authority to deny a discharge to an individual debtor under Section

727(a)(2)(A) based upon transfers of property of corporations found to be the debtor's alter ego);

see also In re Rodriguez, 2008 WL 3200215, at * 7 (recognizing authority that an individual

debtor causing his wholly-owned corporation to transfer property can provide a basis for a denial

of discharge under Section 727(a)(2)(A), but finding no evidence in that case that at the time of

the transfer at issue the debtor was in fact a shareholder of the corporation or that corporate

formalities were disregarded). In New York,[6] "a plaintiff seeking to pierce the corporate veil

must show that 'complete domination' was exercised over a corporation with respect to 'the

transaction attacked,' and 'that such domination was used to commit a fraud or wrong against the

plaintiff which resulted in plaintiff's injury.'" Williams v. Lovell Safety Management Co., LLC,

___ N.Y.S.2d___, 2010 WL 729006, at * 1 (2d Dept. Mar. 10, 2010) (quoting Matter of Morris

v. New York State Dept. of Taxation & Fin., 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 623 N.E.2d

1157 (1993)). In addition, "the corporate veil will be pierced to achieve equity, even absent

fraud, [w]hen a corporation has been so dominated by an individual or another corporation and

its separate entity so ignored that it primarily transacts the dominator's business instead of its own

and can be called the other's alter ego." Id. (internal quotations and citations omitted).

It is undisputed that appellant was the sole shareholder and owner of A.N. Leasing and

that he operated his businesses from his residence. Appellant also effectively admits that he

operated his businesses as a single business entity, (App. Brief, p. 15), thus establishing that he

---

[6] Generally, property rights in the assets of a bankrupt's estate are determined by state law. Butner v. United States, 440 U.S. 48, 53, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); Musso v. Ostashko, 468 F.3d 99, 105 (2d Cir. 2006).

ignored corporate formalities. Appellant challenges, however, the bankruptcy court's finding that he treated all of his businesses as an extension of himself preventing creditors from reaching certain assets of those businesses sufficiently to pierce the corporate veil. (Memorandum Decision, p. 7 n. 3). However, the bankruptcy court found, *inter alia*, that in addition to the indicia of common ownership of the businesses, appellant "assigned portions of personal bills to be paid by the Businesses without any real basis for the amount assigned;" appellant's wife paid certain living expenses with money withdrawn from one of the businesses, paid debts of the businesses from her personal bank account and deposited income from the businesses into her own account; the truck sale proceeds were deposited into appellant's wife's personal bank account; a portion of the truck sale proceeds were used to pay personal expenses of appellant and his wife; and appellant believed that he was personally obligated for his businesses debts. (Id.). Moreover, appellant's wife testified that the truck sale proceeds were placed into her personal bank account in order to prevent attachment of those funds by creditors. In arguing that appellant was merely following his "historical [business] practice" of treating all of his businesses as a single entity by paying off the debt of J&R Materials from the truck sale proceeds, appellant conveniently ignores that a substantial portion of the truck sale proceeds were also disbursed to his wife, who used a portion of those proceeds for personal expenses. Accordingly, the factual findings by the bankruptcy court are supported by the record and are not clearly erroneous.

Moreover, those factual findings support the bankruptcy court's legal conclusion that A.N. Leasing was merely an alter ego of appellant and, thus, its assets, and the proceeds from the sale of those assets, can be treated as assets of the bankruptcy estate. See, e.g. In re Mosher, 417 B.R. at 780 (finding that the debtor was the alter ego of his corporation where, *inter alia*, he was

the sole shareholder of the corporation; he used his own address for that entity; he regularly used funds of that entity for his own personal use; he frequently used the entity for his own personal benefit rather than acting in the best interest of the entity; and he failed to follow corporate formalities, and that, as such, the corporation's assets can be treated as assets of the bankruptcy estate). Specifically, the facts demonstrate that appellant exercised complete dominion and control over A.N. Leasing and used that domination to commit a fraud or wrong against the bankruptcy estate by selling the only assets of that company and using a portion of the proceeds thereof for his own personal use or benefit, i.e., to satisfy debts for which he felt personally obligated.

Since appellant had a direct interest in the assets of A.N. Leasing at the time the Chapter 13 proceeding was commenced, those assets became "property of the estate" as of the commencement of the proceeding pursuant to Section 541(a)(1) of the Bankruptcy Code. 11 U.S.C. § 541(a)(1) ("[The bankruptcy] estate is comprised of * * * all legal or equitable interests of the debtor in property as of the commencement of the case.") Moreover, the proceeds from the sale of those assets constitute "property of the estate" pursuant to Section 541(a)(6) of the Bankruptcy Code. 11 U.S.C. § 541(a)(6) ("[The bankruptcy] estate is comprised of * * * [p]roceeds * * * of or from property of the estate, * * *.")[7]

b.    Applicability of Section 348(f)

---

[7] Moreover, appellant states that "during the pendency of the Chapter 13 bankruptcy, [he] disposed of the Truck Sale Proceeds in the ordinary course, in keeping with the Chapter 13 standard that the debtor has the 'exclusive right to use and control *all property of the estate.*'" (Brief for Defendant-Appellant [App. Brief], p. 8) (emphasis added).

Appellant contends that the bankruptcy judge misapprehended the law by finding that the truck sale proceeds were property of the estate because under Section 348(f) of the Bankruptcy Code, 11 U.S.C. § 348(f), property of the estate only consists of property "that remains in the possession of or is under the control of the debtor on the date of conversion" from Chapter 13 to another chapter and he had already disbursed of the truck sale proceeds as of the date the bankruptcy proceeding was converted from Chapter 13 to Chapter 7.

Section 1306(a) of the Bankruptcy Code provides, in relevant part, that "property of the estate" in a Chapter 13 proceeding "includes, in addition to the property specified in section 541 of this title-- (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 * * * of this title, whichever occurs first; * * *." 11 U.S.C. § 1306(a). Thus, Section 1306(a) expands the property included in a debtor's estate under Chapter 13, that would otherwise not be included in the estate under other chapters of the Bankruptcy Code, to property acquired after commencement of the Chapter 13 proceeding.

Section 348(f)(1) provides, in relevant part, that, with exception not relevant here:

> "when a case under chapter 13 of this title is converted to a case under another chapter under this title--(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion."

11 U.S.C. § 348(f)(1). Section 348(f)(1) "establishes that property acquired after the Chapter 13 filing and before discharge under Chapter 7 is not part of the converted estate." In re Bostick, 400 B.R. at 357 (quoting In re Stamm, 222 F.3d 216, 218 (5th Cir. 2000)); see also In re

LaFlamme, 397 B.R. 194, 201 (Bankr. D. N.H. 2008) ("The Bankruptcy Reform Act of 1994 added subsection (f) to § 348 to clarify that Congress did not want courts to include in post conversion chapter 7 estates the property acquired by the debtor during the preconversion chapter 13 case.")

In interpreting the Bankruptcy Code, courts must "look to the provisions of the whole law, and to its object and policy." In re Boodrow, 126 F.3d 43, 49 (2d Cir. 1997) (quoting Kelly v. Robinson, 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)). Accordingly, Section 727(a)(2)(B) cannot be read "in a vacuum" and the meaning of "property of the estate" under that statute must be "compatible with the rest of the Bankruptcy Code, including Section 348(f)(1)(A)." In re Bostick, 400 B.R. at 359. Although courts are generally "bound to enforce a statute in accordance with the plain meaning of its terms[,] [a court] may look beyond the language of the statute if '(1) a literal application of the statutory language would be at odds with the manifest intent of the legislature; (2) a literal application of the statutory language would produce an absurd result; or (3) the statutory language is ambiguous.'" In re Staniferd, 2008 WL 5273690, at * 7 (quoting In re Wilbur, 344 B.R. 650, 653 (Bankr. D. Utah 2006)). "[E]ven when the plain meaning [of a statute] [does] not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' [the Supreme] Court has followed that purpose, rather than the literal words [of the statute]." United States v. American Trucking Ass'ns, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) (quoting Takao Ozawa v. United States, 260 U.S. 178, 194, 43 S.Ct. 65, 67 L.Ed. 199 (1922)).

In enacting Section 348(f), Congress intended to equalize the treatment that a debtor would receive under a Chapter 13 case that is converted to a Chapter 7 case with the treatment

that the debtor would have received if he or she had filed a Chapter 7 petition originally, see In re Bostick, 400 B.R. 359 (citing In re Pearson, 214 B.R. 156, 164 (Bankr. N.D. Ohio 1997)), thereby vitiating any disincentive toward voluntary repayment plans under Chapter 13, in favor of liquidation under Chapter 7, that might otherwise result from Section 1306(a)'s inclusion of after-acquired property in the estate. See, id. at 357; In re Standiferd, 2008 WL 5273690, at * 7 (holding that one of the policies furthered by Section 348(f)'s exclusion of property acquired post-petition from the converted Chapter 7 estate was to encourage debtors to attempt repayment through a Chapter 13 plan without penalty in the event they are unable to complete their payments); In re LaFlamme, 397 B.R. at 201 (holding that in enacting Section 348(f), "Congress was concerned that a contrary rule would greatly dissuade debtors and create a serious disincentive to chapter 13 filing because debtors would fear that property acquired after filing could be lost if the case were converted" to chapter 7); In re Fobber, 256 B.R. 268, 278 (Bankr. E.D. Tenn. 2000) ("§348(f)(1)(A) was designed to mitigate the effect of § 1306(a) in cases converted from chapter 13 by excluding from property of the estate in the converted case property brought into the estate under § 1306(a)."). This is supported by the legislative history of Section 348(f), H.R. Rep. No. 103-835 (1994), 140 Cong. Rec. H10752-01 (Oct. 4, 1994), which expressly adopted the reasoning of the Third Circuit in In re Bobroff, 766 F.2d 797, 803 (3rd Cir. 1985).[8] See, e.g. In re Standiferd, 2008 WL 5273690, at * 7 n. 8; In re Fobber, 256 B.R. at 278

---

[8] The legislative history states as follows:

"This amendment would clarify the [Bankruptcy] Code to resolve a split in the case of [sic] law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 (and chapter 12), any property acquired after the petition becomes property of the estate, at least until confirmation of a plan. Some courts have held that if the case is converted, all of this after-acquired property becomes part of the

("By adopting <u>Bobroff</u> in its enactment of § 348(f)(1)(A), Congress intended to avoid penalizing debtors for their chapter 13 efforts by placing them in the same economic position they would have occupied if they had filed chapter 7 originally."); <u>In re LaFlamme</u>, 397 B.R. at 201 ("The House Report explicitly adopted the reasoning of <u>In re Bobroff</u> * * * as the result it wanted to reach by adding § 348(f).") The <u>Bobroff</u> court concluded that:

> "[i]f debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if a chapter 13 proves unavailing, the incentive to give chapter 13- which must be voluntary- a try would be greatly diminished. Conversely, when chapter 13 does prove unavailing, no reason of policy suggests itself why the creditors should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts * * *."

(internal quotations and citation omitted).

However, Section 348(f) is inapplicable in this case. The truck sale proceeds became property of the estate because, for the reasons set forth above, they are proceeds of or from

---

estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate does not apply to chapter 7. Other courts have held that the property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.

These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.

This amendment overrules the holding in cases such as <u>Matter of Lybrook</u>, 951 F.2d 136 (7th Cir. 1991) and adopts the reasoning of <u>In re Bobroff</u>, 766 F.2d 797 (3d Cir. 1985). However, it also gives the court discretion, in a case in which the debtor has abused the right to convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted case." 140 Cong. Rec. H10752-01, 1994 WL 545773 (Oct. 4, 1994).

property of the estate, i.e., property in which appellant had a legal or equitable interest as of the commencement of the Chapter 13 proceeding, not because of the expanded definition of "property of the estate" under Section 1306(a). See, e.g. In re Fobber, 256 B.R. at 278; In re LaFlamme, 397 B.R. at 202. Under Section 541(a)(1) and (6), the truck sale proceeds would have been property of the estate regardless of whether appellant had originally filed his petition under Chapter 7, or whether it was converted into a Chapter 7 proceeding from a Chapter 13 proceeding. "Because the chapter 13 status of the case did not render the [truck sale] proceeds property of the estate when they otherwise would not have been, application of § 348(f) to the present case is unnecessary to encourage chapter 13's and in no way penalizes [appellant] for [his] chapter 13 efforts." Id.

"Furthermore, application of § 348(f) to the present case will not result in placing [appellant] in the same financial position [he] would have been if the case had never been in chapter 13. To the contrary, it will result in [appellant] improving [his] position over what it would have been if [he] had [originally commenced this bankruptcy proceeding under] chapter 7." In re Fobber, 256 B.R. at 278. If the case had originally been filed under Chapter 7, the truck sale proceeds would unquestionably be property of the estate available for distribution to appellant's creditors. See, e.g. id.; In re LaFlamme, 397 B.R. at 203.

Moreover, applying 11 U.S.C. § 348(f) to prevent a creditor from objecting to a debtor's discharge under Section 727(a)(2), based upon a post-petition, pre-conversion transfer of property, would lead to the absurd result that allows a debtor to hinder his creditors during a Chapter 13 proceeding by transferring or otherwise disposing of assets prior to conversion without any consequence. See, e.g. In re Standiferd, 2008 WL 5273690, at * 7 (holding that

17

applying Section 348(f) to prevent a Chapter 7 trustee from pursuing a claim to deny a debtor's discharge under Section 727(a)(2) would lead to absurd results because it would allow debtors to hinder their creditors during a Chapter 13 case without any consequence if they subsequently convert their case to a Chapter 7 proceeding); In re Fobber, 256 B.R. at 276 (holding that literal application of Section 348(f)(1)(A) to a case in which the debtors are alleged to have knowingly and fraudulently disposed of the proceeds from the sale of an estate asset post-petition but pre-conversion would lead to an absurdity). Where, as here, a debtor actively transfers or disposes of property that would otherwise have been available to creditors during the Chapter 13 case, the debtor should not be allowed to escape the consequence of a denial of discharge simply because the proceeding has been converted to a Chapter 7 case. See, e.g. In re Standiferd, 2008 WL 5273690, at * 7 ("[W]hen a debtor actively conceals property that would have been available to creditors during the chapter 13 plan, the debtor should not be able to escape the serious consequence of a denial of discharge simply by converting to Chapter 7.") If appellant is correct, i.e., that proceeds of a sale of an asset are not property of the estate pursuant to Section 348(f) because they had been transferred to third parties prior to conversion, "the very act which generally would form the basis for the denial * * * of discharge, i.e., disposition of property of the estate [post-petition but pre-conversion], would insulate the debtor from liability." In re Fobber, 256 B.R. at 276. "Such a result would be absurd and contrary to the overriding bankruptcy policy of providing discharge relief only to honest, but unfortunate debtors." Id.

In light of the above principles, the bankruptcy court correctly found that the truck sale proceeds were "property of the estate" within the meaning of Section 727(a)(2)(B). See, e.g. In re Fobber, 256 B.R. at 273 (finding that the trustee had pled sufficient facts establishing that the

debtors acquired property of the estate, within the meaning of Section 727, when they sold an asset of the estate, i.e., a tractor, to a third party during the Chapter 13 phase of the bankruptcy proceeding, prior to conversion of the case to Chapter 7, and refused to deliver the proceeds from that sale to the trustee); In re LaFlamme, 397 B.R. at 203 (finding that the commissions received by the debtor postpetition, on account of her former position as a real estate broker, but which were earned by her prepetition, were property of the estate because the debtor's right to the commission proceeds arose prepetition and, thus, were property of the estate within the meaning of Section 541(a)).

Moreover, although, as noted by appellant, Section 1303 of the Bankruptcy Code vests the debtor with the exclusive right to use and control all property of the estate, 11 U.S.C. § 1303, neither that statute, nor Section 1306(b), 11 U.S.C. § 1306(b), creates a right to transfer and dispose of the property as he sees fit. Rather, taken together, the rights conferred by Sections 1303 and 1306(b) merely provide the Chapter 13 debtor with the implicit right to use property of the estate for ordinary and necessary living expenses, provided such use is not in bad faith. See In re LaFlamme, 397 B.R. at 205. Appellant's use of the truck proceeds to satisfy the debts of one of his other businesses and his perceived obligation to his wife for her previous payment of the debts of that other business, do not constitute "ordinary and necessary" living expenses. In any event, Section 727 is available to remedy any abuse of the implicit right conferred by those sections, such as occurred here. See In re LaFlamme, 397 B.R. at 206 (holding that circumstances indicating a chapter 13 debtor's abuse of the implicit right recognized by Section 1303 and 1306(b) to use property of the estate for ordinary and necessary living expenses "can be comforted by the availability of § 727 as a potential remedy.")

2.      Intent to Defraud

Appellant contends that each of Judge Grossman's findings of a "badge of fraud" are "flatly incorrect," (App. Brief., p. 10), and that this issue is a mixed question of law and fact subject to *de novo* review. According to appellant, each "badge of fraud," standing alone, merely raised a presumption of intent to defraud, which he rebutted by evidence demonstrating a lack of fraudulent intent.

"Section 727 (a)(2)(B) requires a showing of actual intent to hinder, delay or defraud; a showing of constructive intent is insufficient." In re Bostick, 400 B.R. at 356; In re Standiferd, 2008 WL 5273690, at * 8. The requisite actual intent to hinder, delay or defraud must exist at the time of the transfer. In re Bernier, 282 B.R. 773, 780-781 (Bankr. D. Del. 2002).

"Since fraudulent intent is rarely subject to direct proof, [courts must] look to circumstantial 'badges of fraud' to establish the requisite actual intent to defraud." In re Boyer, 328 Fed. Appx. at 715 (quoting Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1582 (2d Cir. 1983). These "badges of fraud" include: "(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry." In re Kaiser, 722 F.2d at 1582-1583. This list is not exhaustive and the party objecting to discharge need not establish the presence of all of those "badges of fraud" in order to raise a presumption of intent to defraud. See, e.g. In re

<u>Arbaney</u>, 345 B.R. 293, 302-303 (Bankr. D. Colo. 2006) (holding that "where other significant indicia of fraud are present, it may not be necessary to show inadequate consideration to give rise to a presumption of fraud.") Nonetheless, "the absence of several very significant badges of wrongful intent may disprove actual intent to hinder, delay or defraud." <u>In re Bernier</u>, 282 B.R. at 782.

"A sufficient showing of the presence of badges of fraud raises a presumption that a debtor's actions were done with fraudulent intent." <u>In re Arbaney</u>, 345 B.R. at 301. In determining intent to defraud, courts must look to the totality of the evidence presented and the circumstances of the case. <u>Id.</u> at 306-307; <u>In re Bernier</u>, 282 B.R. at 781.

A classic example of fraud is "[t]he transfer of property by the debtor to his spouse while insolvent, while retaining the use and enjoyment of the property." <u>In re Kaiser</u> 722 F.2d at 1583. Appellant's transfer of the truck proceeds to his wife, who placed those funds in her personal bank account and used at least a portion of those funds for her and appellant's personal use, implicates this indicia of fraud. Moreover, there was a close relationship between appellant and the other transferee of the truck sale proceeds, insofar as that entity employed appellant's wife.

Further, "[a]dequacy of consideration is central to any discussion of a transfer of assets in derogation of the rights of a [debtor's] creditors." <u>In re Arbaney</u>, 345 B.R. at 302. In determining the adequacy of consideration, the focus is on the effect that the transfer had on the assets of the bankruptcy estate, not on what changed hands between the debtor and the transferees. <u>Id.</u> No consideration ever actually came into appellant's hands. Rather, what appellant received from the disbursement of truck sale proceeds was the payment of debts owed by one of his other businesses and of a purported obligation to his wife for her previous payment

of debts owed by that business. Appellant's scheduled creditors, including Ranco, realized nothing from the truck sale proceeds. Since the bankruptcy estate received no benefit from the transfer of the truck sale proceeds, there was inadequate consideration for that transfer. Cf. In re Arbaney, 345 B.R. at 305 (finding adequate consideration for the transfer of assets where the transfer did not deplete the bankruptcy estate, but rather enhanced it). Accordingly, and in light of the other indicia of fraud properly found by the bankruptcy court to be present in this case, i.e., the benefit appellant retained from the truck sale proceeds as a result of his wife's payment of personal expenses therefrom and the better financial position appellant was in as a result of the transfer of truck sale proceeds vis-a-vis his corporate creditors, as well as appellant's wife's testimony that the truck sale proceeds were deposited into her personal bank account to "prevent judgment creditors from freezing the accounts and receiving the money," the bankruptcy court did not err in finding that Ranco presented sufficient evidence to raise a presumption of fraudulent intent.

However, the debtor may rebut that presumption by offering evidence sufficient to demonstrate "the absence of a fraudulent motive for his actions." In re Arbaney, 345 B.R. at 301 (citing cases); see also In re Gollomp, 198 B.R. at 440 (holding that once a party objecting to discharge raises a presumption of intent to defraud, the debtor must provide evidence sufficient to rebut the presumption of intent to defraud). Nonetheless, the party objecting to discharge "always bears the ultimate burden of proving, by a preponderance of the evidence, the essential elements" of its objection. In re Gollomp, 198 B.R. at 440; see Fed. R. Bankr. P. 4005 ("At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection.")

Contrary to appellant's contention, he did not present sufficient evidence to rebut the presumption of intent to defraud in this case. There is no evidence that appellant's creditors fared better as a result of the disbursement of truck sale proceeds to appellant's wife and Island Leasing. To the contrary, only J&R Materials, appellant's wife and appellant benefitted from the disbursement. Although appellant contends that the disbursement of truck sale proceeds was made as part of a good faith effort to raise money to satisfy creditors' claims and to save a business, tellingly, the creditors whose claims were satisfied were not creditors of appellant, but of J&R Materials, and there was no business to save since all of A.N. Leasing's assets had been liquidated. Similarly, appellant's reliance on the holding in In re Bernier, 282 B.R. at 781, that an "intent to prefer one bona fide creditor over another is not equivalent to intent to hinder, delay or defraud creditors," 282 B.R. at 781, is misplaced, since the creditors whom appellant preferred were not bona fide creditors of appellant, or even of A.N. Leasing, but of J&R Materials.

Moreover, contrary to appellant's contention that neither he nor his wife "benefitted financially from the transfer" of the truck sale proceeds, (App. Brief, p. 11), the evidence supports the bankruptcy court's finding that at least a portion of the truck sale proceeds were used to pay the personal expenses of appellant and/or his wife. The fact that appellant is currently in financial straits does not nullify the benefit he and his wife received from the truck sale proceeds at the time of the transfer.

Upon *de novo* review of the entire record, with due deference given to the bankruptcy court's findings of fact based on its credibility assessments of witnesses, and consideration of the principle that "[a]n appellate court cannot substitute its interpretation of the evidence for that of the trial court simply because the reviewing court might give the facts another construction [and]

resolve the ambiguities differently," In re Boyer, 328 Fed. Appx. at 716 (quoting Inwood Labs. v. Ives Labs., 456 U.S. 844, 857-858, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982), I am not left with "the definite and firm conviction" that the bankruptcy court committed any mistake in its determination, upon appropriate consideration of the "badges of fraud" and appellant's explanations therefor, that appellant possessed the requisite intent to defraud. Id. The bankruptcy court's findings of fact were not clearly erroneous and there was ample basis supporting the conclusion that appellant intended to hinder, delay or defraud his creditors, including Ranco, by transferring the truck sale proceeds to third parties.

III.    CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is affirmed.

**SO ORDERED.**

SANDRA J. FEUERSTEIN
United States District Judge

Dated: March 18, 2010
        Central Islip, New York

24